**Margaret Jane WALLACE,**
**Plaintiff/Appellee,**

v.

**Lacey Patrick WALLACE,**
**Defendant/Appellant.**

Court of Appeals of Tennessee,
Middle Section.

April 22, 1987.

Permission to Appeal Denied
by Supreme Court June 22, 1987.

Jon E. Jones, Michael E. Clift, Moore, Jones, Rader & Clift, Cookeville, for plaintiff/appellee.

Sam Wallace, Nashville, for defendant/appellant.

## OPINION

KOCH, Judge.

This is the second appeal in this protracted divorce proceeding. The Chancery Court for Putnam County granted the wife a divorce in 1983. The husband's first appeal challenged the trial court's alimony award and the manner in which the trial court divided the marital property. This Court affirmed the periodic alimony award but vacated the portions of the decree dividing the parties' stock in a closely held corporation and awarding the wife additional funds to defray her legal expenses.[1]

The trial court conducted a full hearing concerning the value and disposition of the corporate stock and the nature of the legal

---

1. *Wallace v. Wallace,* App. No. 84–69–II (Tenn. Ct.App. Dec. 13, 1984).

services provided to the wife. On November 6, 1985, the trial court entered an order dividing the remaining marital property and awarding the wife additional funds for the payment of her legal expenses. The husband has appealed again to this Court. In essence, he takes issue with (1) the manner in which the trial court valued and divided the parties' interest in the corporation, (2) the award to the wife for her legal expenses, and (3) the award of periodic alimony. The trial court's decision, as modified herein with regard to periodic alimony, is affirmed.

## I.

Margaret Jane Wallace and Lacey Patrick Wallace were married in July, 1953, one month after Mrs. Wallace graduated from high school. Mr. Wallace later graduated from college and obtained a law degree. Mrs. Wallace worked to put her husband through law school and then remained at home to raise the parties' two children who are now adults.

Mr. Wallace practiced law briefly and then worked as a contract administrator. In June, 1975, Mr. Wallace and William K. Adams incorporated a metal fabricating business named Gil, Inc. Later they incorporated another metal fabricating business called A & W Fabricators, Inc. and also formed A & W Rentals, a partnership that owned the plant facilities that were leased to Gil, Inc. and A & W Fabricators, Inc. The parties' dispute concerning the valuation and distribution of their interest in Gil, Inc. is at the heart of this appeal.

Gil, Inc. was on shaky financial footing during its early years of operation. Initially it had difficulty obtaining orders because it did not have an established reputation in the market. It also experienced cash flow problems and as a result had difficulty paying its creditors. The company was required to borrow extensively to obtain operating funds, and its creditors required Mr. Wallace and Mr. Adams to guarantee these loans and to secure these loans with their personal assets.

The parties were experiencing serious marital problems in 1981 because Mr. Wallace was having an adulterous affair. During this time, Mr. Wallace asked Mrs. Wallace to permit the family farm to be used as collateral for another loan to Gil, Inc. Mrs. Wallace agreed to do so only on the condition that Mr. Wallace place one half of his Gil, Inc. stock in her name. Mr. Wallace did so, and thus Mrs. Wallace became owner of record of twenty-five percent of Gil, Inc.'s stock. Mr. Wallace left Mrs. Wallace in July, 1981.

Mr. Wallace commenced divorce proceedings in the Chancery Court for Putnam County on March 23, 1982. Mrs. Wallace counterclaimed for divorce three days later. Mr. Wallace eventually conceded that he had committed adultery. Nevertheless, the original divorce proceedings lasted almost two years because of the parties' dispute concerning the division of the marital estate. The primary disagreement centered on the stock of Gil, Inc. On one hand Mr. Wallace insisted that Mrs. Wallace should not receive any interest in Gil, Inc. On the other hand, Mrs. Wallace insisted that Mr. Wallace was undervaluing this asset.

The trial court granted Mrs. Wallace a divorce on the grounds of adultery and cruel and inhuman treatment on May 19, 1983 and referred the question of the division of the marital estate to a special master. Mr. Wallace claimed during the proceedings before the master that Gil, Inc. was insolvent and that its stock had no value. However, while these proceedings were pending, Gil, Inc. obtained a $825,377 judgment against a customer and one of its guarantors.

Mr. Wallace remarried in July, 1983.

The trial court filed a memorandum opinion on February 1, 1984 dividing the parties' marital property. While it awarded Mr. Wallace sole ownership of A & W Fabricators, Inc. and A & W Rentals, it allowed Mrs. Wallace to keep twenty-five percent of the stock in Gil, Inc. because it was unable to place a value on the parties' interest in the company. The trial court's final decree was entered on February 9, 1984.

This Court vacated the trial court's decision concerning the Gil, Inc. stock. We ruled that Mr. Wallace was entitled to all the Gil, Inc. stock and that Mrs. Wallace should receive a corresponding monetary award to offset the value of the interest in Gil, Inc. she had been awarded originally. We also vacated the award to Mrs. Wallace for attorneys fees because no proof had been presented to the trial court concerning the nature of the services provided or their cost.

The trial court heard this matter again in September, 1986. The proof showed that Gil, Inc. is a thriving defense contractor. It employs ninety-one persons and has a $12,000,000 to $15,000,000 backlog of orders. Its assets increased almost five fold to $3,488,197 in 1985. Its gross sales for 1984 were $4,713,975, and Mr. Wallace projected that the company's total revenues for 1985 would be $7,000,000. The company's gross profit increased from $398,684 in 1980 to $1,533,533 in the first six months of 1985. Its net income after taxes increased from $126,888 in 1980 to $484,300 during the first six months of 1985.

Contrary to his earlier testimony before the special master, Mr. Wallace stated in a pre-trial deposition that Gil, Inc.'s market price was between $4 million and $5 million and that he would accept $2,000,000 for his interest in the company. Mr. William K. Adams, the co-owner of Gil, Inc. stated that the present cash market value of Gil, Inc. was between $3 million and $6 million based upon the company's market position, assets and future earnings. This was confirmed by Gil, Inc.'s former comptroller who stated that the value of Gil, Inc. was between $3 million and $3.6 million as of January, 1983.

Based upon this proof, the trial court found that the present value of the Gil, Inc. stock was between $3 million and $3.5 million and that its value at the time of the parties' divorce was $3 million. Thus, the trial court found that the parties' interest in Gil, Inc. was worth $1.5 million. The trial court determined that this asset should not be divided equally because it had already awarded Mrs. Wallace periodic alimony. Thus, it determined that Mr. Wallace should receive all the stock in Gil, Inc. and, in return, that Mr. Wallace should pay Mrs. Wallace $660,000 for her interest in the company. The trial court decided that this award with interest should be paid in monthly installments over fifteen years. The trial court also awarded Mrs. Wallace $18,000 for the payment of the legal services she had incurred through the first appeal of this case as well as $10,000 for the loss of use of the assets she had been awarded in the first proceeding.

## II.

### *The Record on Appeal*

The parties have been locked in a dispute concerning the status of the record on appeal. Mrs. Wallace insists that appeal should be dismissed because Mr. Wallace did not file the transcript of the September 24–25, 1985 hearing in the manner required by Tenn.R.App.P. 24(b). Mr. Wallace insists that he has complied substantially with the Tennessee Rules of Appellate Procedure.

Mr. Wallace filed a somewhat premature but timely notice of appeal on October 16, 1985. The court reporter filed the transcript of the proceedings with the clerk of the trial court on November 15, 1985 and provided counsel for both parties with a copy of the transcript. However, counsel for Mr. Wallace failed to comply with Tenn.R.App.P. 24(b) by neglecting to file a proof of service with the trial court clerk and with opposing counsel. Notwithstanding this omission, counsel for Mrs. Wallace conceded during oral argument that he had actual notice that the transcript of the September, 1985 proceedings had been filed with the trial court clerk.

 After several unsuccessful attempts to seek this Court's permission to file this transcript as part of the appellate record, counsel for Mr. Wallace obtained an order from the trial court on June 17, 1986 authenticating the transcript and exhibits and directing that they be made part of the record on appeal. Tenn.R.App.P. 24(e) empowers the trial court to direct that a sup-

plemental record be filed in this Court containing matters "properly includable" in the record on appeal. Thus, the trial court's June 17, 1986 order, by itself, is sufficient to bring the transcript and exhibits before this Court.

These materials should be considered by this Court even if the trial court had not directed that a supplemental record be filed. The Tennessee Rules of Appellate Procedure are not intended to erect a technical barrier to considering an appeal on its merits. Tenn.R.App.P. 1 states:

> These rules shall be construed to secure the just, speedy, and inexpensive determination of every proceeding on its merits.

Thus, with a few exceptions not pertinent in this case, Tenn.R.App.P. 2 gives this Court the authority to suspend the strict application of the rules when good cause exists. The Tennessee Supreme Court has made it clear that the Tennessee Rules of Appellate Procedure should not be used to thwart appeals where no prejudice to the appellee can be shown. *Davis v. Sadler,* 612 S.W.2d 160, 161 (Tenn.1981).

■ There is no evidence in this record that Mrs. Wallace was prejudiced by Mr. Wallace's failure to provide notice in accordance with Tenn.R.App.P. 24(b) that the transcript of the September, 1985 proceedings had been filed with the trial court. In fact, counsel for Mrs. Wallace candidly conceded that he was not prejudiced because he had actual notice that the transcript had been filed. Thus, in accordance with Tenn.R.App.P. 2, this Court waives the requirements of Tenn.R.App.P. 24(b) and directs that the supplemental record filed with this Court on June 18, 1986 be made a part of the record on appeal in this case.

### III.

### *The Disposition of the Parties' Interest in Gil, Inc.*

Mr. Wallace again takes issue with the trial court's disposition of the parties' interest in Gil, Inc. Specifically, he asserts that the trial court erred by determining Gil, Inc.'s value in 1983 instead of December 7,

1982 when the trial court first heard proof in this case. He also asserts that the trial court used an improper method to arrive at the value of the parties' interest in Gil, Inc. We disagree.

### A.

There is no consistent approach concerning the time when marital property should be valued in a divorce proceeding. However, in the absence of a statute, most courts recognize that choosing the time to place a value on marital property should be left to the discretion of the trial court. See 27B C.J.S. *Divorce* § 545 (1986) and Annot., 34 A.L.R.4th 63 §§ 4 & 5 (1984). A majority of state courts have held that the value of marital assets should be determined at the time the judgment of dissolution is granted. B. Goldberg, *Valuation of Divorce Assets* § 1.10 (1984) and 24 Am. Jur.2d *Divorce and Separation* § 938 n. 8 (1983).

■ Tenn. Code Ann. § 36–4–121 provides no direction concerning when the value of marital property should be determined. The Tennessee Supreme Court has held unequivocally that trial courts have wide discretion concerning the manner in which they divide marital property. *Fisher v. Fisher,* 648 S.W.2d 244, 246 (Tenn.1983). Thus, we cannot perceive of any reason why this discretion should not extend to setting the date upon which the value of the marital property will be determined as long as the date chosen bears some relationship to the divorce proceeding and nature of the property itself.

■ The trial court decided that the value of Gil, Inc. would be determined at the time of the divorce. This decision is in accord with the prevailing view. The final decree awarding Mrs. Wallace a divorce was entered on May 19, 1983. Thus, it was proper to use Gil, Inc.'s 1983 value rather than its value when the parties separated in July, 1981 or when the trial court first heard this matter in December, 1982.

### B.

Mr. Wallace also asserts that the manner in which Mrs. Wallace's witnesses and the

trial court arrived at Gil, Inc.'s value was flawed. He insists that the value of Gil, Inc.'s stock can only be determined using the "Delaware Rule" adopted by the Tennessee Supreme Court in *Blasingame v. American Materials, Inc.,* 654 S.W.2d 659, 667 (Tenn.1983). While the Tennessee Supreme Court has held that the "Delaware Rule" must be used to determine the value of dissenting minority shareholder's shares, it has not decreed that the "Delaware Rule" is the only acceptable way to arrive at the value of the parties' interest in a closely held corporation in a divorce proceeding.

■ The value of marital property is a fact question. Thus, a trial court's decision with regard to the value of a marital asset will be given great weight on appeal. See *Edwards v. Edwards,* 501 S.W.2d 283, 288 (Tenn.Ct.App.1973). In accordance with Tenn.R.App.P. 13(d), the trial court's decisions with regard to the valuation and distribution of marital property will be presumed to be correct unless the evidence preponderates otherwise. See *Hardin v. Hardin,* 689 S.W.2d 152, 154 (Tenn.Ct.App. 1983).

■ The value of a marital asset is determined by considering all relevant evidence regarding value. *In re Marriage of Rosen,* 126 Ill.App.3d 766, 81 Ill.Dec. 840, 846–47, 467 N.E.2d 962, 968–69 (1984) and 27C C.J.S. *Divorce* §§ 566 & 569 (1986). The burden is on the parties to produce competent evidence of value, and the parties are bound by the evidence they present. *In re Marriage of Deem,* 123 Ill.App.3d 1019, 79 Ill.Dec. 542, 546, 463 N.E.2d 1317, 1321 (1984); *In re Marriage of Larkin,* 462 N.E.2d 1338, 1344 (Ind.Ct. App.1984); and *Martin v. Martin,* 358 N.W.2d 793, 798 (S.D.1984). Thus the trial court, in its discretion, is free to place a value on a marital asset that is within the range of the evidence submitted. *In re Marriage of Johnston,* Mont. 726 P.2d 322, 325 (1986) and *Hein v. Hein,* 366 N.W.2d 646, 650 (Minn.App.1985).

There are a number of acceptable methods available to determine the value of a corporation. *Blasingame v. American Materials Inc.,* 654 S.W.2d 659, 666 (Tenn. 1983) recognized three of these methods: (1) the market value method, (2) the asset value method, and (3) the earnings value or capitalization of earnings method. There are still others including the dividend method and the liquidating value method. See B. Goldberg, *Valuation of Divorce Assets* §§ 6.5–6.8 (1984). The choice of the proper method or combination of methods depends upon the unique circumstances of each corporation.

■ A public corporation's value is most reliably determined using the market value method. *Blasingame v. American Materials, Inc.,* 654 S.W.2d 659, 666 (Tenn. 1983). This method presumes that there is an established market for the corporation's stock which will enable the court to arrive at the price a willing buyer would pay for the stock. The stock in closely held corporations is rarely traded. Thus, it is improper to attempt to place a value of a closely held corporation using the method generally used to place a value on a public corporation. *Lotz v. Lotz,* 120 Cal.App.3d 379, 384, 174 Cal.Rptr. 618, 621 (1981).

■ Determining the value of a closely held corporation is not an exact science. *In re Marriage of Mullins,* 121 Ill.App.3d 86, 76 Ill.Dec. 560, 562, 458 N.E.2d 1360, 1362 (1984). The courts have not articulated a consistent approach to the valuation of this type of marital asset. However, Rev.Rul. 59–60, 1959–1 C.B. 237 has been recognized as providing the most comprehensive guide to making this determination. B. Goldberg, *Valuation of Divorce Assets* §§ 1.12 & 6.6 (1984) and 24 Am. Jur.2d *Divorce and Separation* § 947 (1983). But Rev.Rul. 59–60 is intended to be only a guide. It was never intended to be an inflexible rule. *Turgeon v. Turgeon,* 190 Conn. 269, 460 A.2d 1260, 1265 (1983).

Rev.Rul. 59–60 contains nine factors which should be considered when determining a closely held corporation's value. These factors include:

(1) the nature of the business, including its history since organization,

(2) the economic status of the industry and the nation at the critical date of valuation,

(3) book value,

(4) earnings,

(5) dividends and dividend paying capacity,

(6) the existence or lack of good will or other intangible value,

(7) sales of the stock and the size of the block to be valued,

(8) the selling price of comparable securities relative to their earnings, dividends and asset values,

(9) the life insurance proceeds received by a corporate beneficiary on a policy covering the sole or controlling stockholder.

We have examined the proof in this case in light of these factors and have determined that the evidence does not preponderate against the trial court's determination that the value of Gil, Inc. in 1983 was $3,000,000 and that the parties' interest in Gil, Inc. at that time was $1,500,000.

■ Mr. Wallace himself testified that Gil, Inc.'s value was between $4,000,000 and $5,000,000. During preliminary discussions concerning the possible sale of the company in late 1983, Mr. Wallace insisted that Gil, Inc.'s value was $4,400,000 while the broker he had retained to assist in the sale had set the asking price at $3,600,000. Mr. Adams, the co-owner of the business, similarly valued Gil, Inc. between $3,000,-000 and $6,000,000.[2] Likewise, Gil, Inc.'s former comptroller, using the capitalization method, testified that Gil, Inc.'s value was between $3,000,000 and $3,600,000. Mr. Wallace offered no admissible proof to the contrary that the trial court found credible. Thus, the trial court's decision concerning the value of the parties' interest in Gil, Inc.

was within the range of the competent evidence submitted.

## IV.

### The Periodic Alimony Award

■ Mr. Wallace also questions the trial court's decision to award Mrs. Wallace $1,250 per month as periodic alimony. He insists that periodic alimony is not justified in light of the "outrageous cash property award" granted to Mrs. Wallace by the trial court. This Court specifically rejects Mr. Wallace's characterization of the trial court's division of the marital estate as "outrageous."[3] Nevertheless, after carefully evaluating the proof in light of the factors enumerated in Tenn.Code Ann. § 36–5–101(d), we have determined that Mrs. Wallace's periodic alimony award should be limited to a fixed term.

A trial court's decision to award periodic alimony depends upon the unique facts and circumstances of each case. *Walker v. Walker*, 656 S.W.2d 11, 14 (Tenn.Ct.App. 1983). This Court gives a trial court great latitude in making an alimony decision and is generally disinclined to interfere unless the facts clearly require that we do so. *Ingram v. Ingram*, 721 S.W.2d 262, 264 (Tenn.Ct.App.1986) and *Lancaster v. Lancaster*, 671 S.W.2d 501, 502 (Tenn.Ct.App. 1984).

Tenn. Code Ann. § 36–5–101(d) clearly states that alimony awards should be "rehabilitative" and "temporary" whenever possible. The statute also lists eleven factors for courts to consider when they are asked to award periodic alimony. The courts routinely recognize and apply these standards. *Fisher v. Fisher*, 648 S.W.2d 244, 246–47 (Tenn.1983) and *Massey v. Mas-*

---

**2.** Mr. Wallace now attempts to detract from the weight of this testimony by characterizing it as "romanticized and fanticized" because "they've put their life blood into this [company.]" Mr. Wallace is bound by his own statements. The trial court was justified in considering his opinions concerning his property's value. *State ex rel. Smith v. Livingston Limestone Co.*, 547 S.W.2d 942, 943 (Tenn.1977) and *Haynes v. Cumberland Builders, Inc.*, 546 S.W.2d 228, 234 (Tenn.Ct.App.1976).

**3.** This type of argument has no place in the briefs filed in this Court. While this Court attempts to provide counsel in acrimonious cases such as this one with some latitude in their argument, this statement runs afoul of Tenn.Ct.App.R. 8 in that it shows disrespect to the trial court.

*sey,* 621 S.W.2d 728, 729–30 (Tenn.1981). However, as a general matter, the need of the innocent spouse for alimony and the ability of the obligor spouse to pay alimony are the two most frequently discussed factors. *Fisher v. Fisher,* 648 S.W.2d 244, 246–47 (Tenn.1983) and *Barker v. Barker,* 671 S.W.2d 843, 847 (Tenn.Ct.App.1984).

There is no question in this case that Mr. Wallace is able to pay periodic alimony. He possesses a law degree and is president of two prospering metal fabricating companies. He is in good health, and his annual income has increased since 1980 from $36,604 to $261,106.

Mrs. Wallace's need for periodic support and maintenance is, however, a closer question. She is presently fifty-one years old. She has only a high school education and few readily marketable skills. She has been able to find only part time employment in a dress shop since the divorce. Her 1984 income, most of which was alimony, was $14,600. These factors, by themselves, support an award of periodic alimony. However, Tenn. Code Ann. § 36–5–101(d)(7) also requires this Court to consider the assets the innocent spouse has received in the division of the marital property.

Mrs. Wallace will receive substantial assets by virtue of the manner in which the trial court has divided the marital property. In the first proceeding, the trial court awarded her $140,000 to offset the value of the property it awarded to Mr. Wallace.[4] In this proceeding, the trial court has awarded Mrs. Wallace an additional $660,000 in lieu of the twenty-five percent interest in Gil, Inc. she was awarded originally. Thus, as part of the division of the marital property, Mrs. Wallace will receive $800,000. The trial court has directed that Mrs. Wallace receive $100,000 of this amount immediately and that the amount remaining should be paid in 180 monthly installments in the amount of $7,774.57.

The purpose of requiring that the marital property be divided equitably is to preserve the property rights of the innocent spouse. *Duncan v. Duncan,* 686 S.W.2d 568, 572 (Tenn.Ct.App.1984). Where possible, the combined purpose of the division of the marital property and the award of periodic alimony is to avoid placing the innocent spouse in a financial position worse than the one existing prior to the divorce. *Duncan v. Duncan,* 686 S.W.2d 568, 572 (Tenn. Ct.App.1984) and *Shackleford v. Shackleford,* 611 S.W.2d 598, 601 (Tenn.Ct.App. 1980).

The cash award Mrs. Wallace will receive as a result of the division of marital property is sufficient, as long as the monthly payments are made, to enable Mrs. Wallace to maintain a standard of living at least equal to the one she enjoyed prior to the divorce. Thus, this Court has determined that Mrs. Wallace will have no need for period alimony once Mr. Wallace begins to make the monthly payments required by virtue of the division of the marital property. *Lancaster v. Lancaster,* 671 S.W.2d 501, 503–04 (Tenn.Ct.App.1984).

However, the protracted nature of this action militates against bringing Mr. Wallace's obligation to pay periodic alimony to an abrupt end. The trial court originally granted Mrs. Wallace a divorce on May 19, 1983 and directed Mr. Wallace to pay her $500 per month pending the division of the marital property. On February 9, 1984, the trial court entered its final order that, among other things, required Mr. Wallace to pay periodic alimony in the amount of $1,250 per month. Mr. Wallace's appeal has prevented Mrs. Wallace from obtaining the benefits of the trial court's February, 1984 decision. It appears that Mr. Wallace has not consistently honored the terms of the trial court's decrees concerning his responsibility for Mrs. Wallace's maintenance and support while this proceeding continues. Thus, this Court finds that Mr. Wallace's obligation to pay Mrs. Wallace $1,250 per month for support and maintenance should continue until he has made the first twelve $7,774.57 property distribution pay-

4. This Court affirmed this award on the first appeal, and Mr. Wallace does not contest it in this proceeding.

ments in a timely manner. When this has been done, Mr. Wallace may request that his obligation to make additional support payments be suspended.

■ This Court's decision to limit the duration of Mr. Wallace's obligation to pay periodic alimony is premised upon his obligation to make property distribution payments to Mrs. Wallace for fifteen years. Pursuant to Tenn.Code Ann. § 36-4-121(e)(2), the trial court has properly placed a lien upon Mr. Wallace's property to secure his obligation to Mrs. Wallace. As further security, this Court has determined that any future failure on Mr. Wallace's part to make the property distribution payments in a timely manner will constitute a changed condition that will enable Mrs. Wallace to seek an order from the trial court reinstating Mr. Wallace's obligation to make periodic payments to Mrs. Wallace for her maintenance and support.

## V.

### The Award for Mrs. Wallace's Legal Expenses

Finally, Mr. Wallace insists that he should not be required to pay Mrs. Wallace an additional $18,000 to cover her legal expenses through the first appeal of this case. He insists that Mrs. Wallace has been awarded ample assets that can be used to pay these expenses. While it is true that an award for reasonable legal expenses is conditioned upon the spouse's lack of resources, *Fox v. Fox*, 657 S.W.2d 747, 749 (Tenn.1983) and *Ingram v. Ingram*, 721 S.W.2d 262, 264 (Tenn.Ct.App. 1986), Mr. Wallace is in no position to raise this issue at this stage of the proceeding because this Court affirmed the trial court's decision that Mrs. Wallace was entitled to an award to assist her in paying her legal expenses in its first opinion in this case:

An award for legal expenses is considered to be alimony. *Raskind v. Raskind*, 45 Tenn.App. 583, 601, 325 S.W.2d 617, 625 (1959) and *Humphreys v. Humphreys*, 39 Tenn.App. 99, 125, 281 S.W.2d 270, 282 (1954). These awards are general-

ly considered to be alimony *in solido*, and thus they are not subject to change once the decrees granting them become final. *Aleshire v. Aleshire*, 642 S.W.2d 729, 732 (Tenn.Ct.App.1981) and *Spalding v. Spalding*, 597 S.W.2d 739, 741 (Tenn.Ct.App. 1980).

The trial court's February 9, 1984 order states that Mrs. Wallace should receive

an attorney fee in the sum of Fifteen Thousand and no/100 ($15,000) Dollars to be deemed and treated as alimony in solido to be paid within ninety (90) days of the filing of the decree in this matter.

Mr. Wallace took issue with this award. This Court affirmed the trial court's decision that Mrs. Wallace was entitled to an award for attorneys fees. However, we vacated the trial court's order and remanded the case solely to enable the trial court to receive evidence concerning how much the award for attorney's fees should be. *Wallace v. Wallace*, App.No. 84-69-II, slip op. at 13 (Tenn.Ct.App. Dec. 13, 1984). Mr. Wallace did not seek further appellate review of this decision, and thus it has become final with regard to the legal expenses Mrs. Wallace incurred through February 9, 1984.

■ On remand, counsel for Mrs. Wallace presented proof that Mrs. Wallace had incurred $13,331.25 in legal fees prior to the first appeal of this case. Mrs. Wallace herself noted that she had been required to be in court twenty-three different times throughout the long history of this case. Thus an award of $13,000 for Mrs. Wallace's legal expenses prior to the first appeal is amply supported by the record and should be affirmed.

■ Trial courts also have the authority to make additional awards for legal expenses incurred on appeal. *Seaton v. Seaton*, 516 S.W.2d 91, 93 (Tenn.1974). Mrs. Wallace's counsel testified at trial that Mrs. Wallace had incurred an additional $5,793.75 in legal expenses as a result of Mr. Wallace's appeal from the trial court's February 9, 1984 order. While this Court's consideration of the award for attorneys fees for the first appeal of this case is not restricted by considerations of finality, this

Court recognizes that trial courts have wide discretion concerning requiring a husband to pay for his wife's legal expenses incident to divorce litigation. *Fox v. Fox*, 657 S.W.2d 747, 749 (Tenn.1983). In light of the proof in the record, this Court cannot conclude that the trial court erred by awarding Mrs. Wallace an additional $5,000 for the legal expenses she incurred during the first appeal of this case.

### VI.

For the reasons stated herein, the judgment of the trial court, as modified by this opinion, is affirmed. The case is remanded to the trial court. The costs of this appeal are taxed to Lacy Patrick Wallace and his surety for which execution, if necessary, may issue.

TODD, P.J. (M.S.), and CANTRELL, J., concur.