# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

**FILED**

**July 2, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

JENNETTIA JANE BLANTON ISBELL,)

      )

    Plaintiff/Appellant,     )    Madison Chancery No. R.D. 50345

      )

**v.**      )

      )    Appeal No. 02A01-9708-CH-00188

**LARRY EUNIEL ISBELL,**    **)**

      )

    Defendant/Appellee.    **)**

## APPEAL FROM THE CHANCERY COURT OF MADISON COUNTY
### AT JACKSON, TENNESSEE

### THE HONORABLE JOE C. MORRIS, CHANCELLOR

For the Plaintiff/Appellant:      For the Defendant/Appellee:

Mary Jo Middlebrooks      James F. Butler
Jackson, Tennessee      Jackson, Tennessee

**AFFIRMED**

HOLLY KIRBY LILLARD, J.

CONCUR:

W. FRANK CRAWFORD, P.J., W.S.

ALAN E. HIGHERS, J.

**OPINION**

This is a divorce case. In dividing marital property, the trial court awarded the wife 50.5% of the marital property and awarded the husband 49.5%. The trial court did not award the wife alimony or attorney's fees. The wife now appeals the division of marital property, and the failure to award alimony and attorneys' fees. We affirm.

Larry Euniel Isbell ("Husband") and Jennettia Jane Blanton Isbell ("Wife") were married for approximately fourteen years. At the time of trial, Husband was fifty-five years old, and Wife was fifty years old. There are no children of the marriage. Wife is employed in the payroll department at American Olean Tile Company ("American Olean") and has worked with the company for thirty years. Wife testified that she presently manually prepares documents for billing, accounts payable, and payroll. She performs limited data entry for payroll. Although there were minor variances in the evidence, the proof at trial indicated that Wife earns between $23,000 and $28,000 annually. Wife and her supervisor at American Olean, Kent Pledge, testified that in their opinion her position at the company was at risk because of a merger between American Olean and Dal-Tile Corporation. Pledge testified that the merged company's employment force had been reduced from four hundred to one hundred and eighty-five employees.

Husband is a buyer of railroad crossties with Koppers Industries and has worked with the company for twenty-three years. As with the evidence on Wife's income, there are minor variances, but the proof at trial indicated that Husband earns between $24,000 and $26,000 annually.

Prior to the divorce, the parties were also involved in several other businesses. The parties owned a cattle business in which they bought and sold cattle. At trial, Husband testified that in March 1995, he sold the remaining cattle for $11,900 and after expenses netted $5,686 profit.

The parties also owned lots in Timberhill subdivision in McNairy County, Tennessee, for investment purposes. Husband builds houses on the lots and sells them. At the time of trial, Husband was residing in a home ("Jane Cove Property") in the Timberhill subdivision. Wife resided on Smith Lane ("Smith Lane Property") in the home shared with Husband prior to the separation. The Smith Lane Property was owned by Husband prior to the marriage. In addition, Husband was a partner in a grain operation known as Store-O-Matic, located in Corinth, Mississippi. Store-O-Matic owned storage facilities on the property but leased the real property.

At trial, Wife admitted having an affair in 1991 and 1992. She testified that in March 1993 Husband forgave her, and they continued the marital relationship. The parties subsequently separated in April 1995. Wife alleged Husband began having an affair prior to the separation and dissipated marital assets in anticipation of a divorce.

By decree entered on March 19, 1997, the trial court ordered the parties divorced. The trial court awarded the Smith Lane Property, as well as the adjacent lot, to Wife. Wife was also awarded Husband's pre-marital equity in the Smith Lane Property, which totaled $80,000. In addition, the trial court awarded Wife two investment lots in the Timberhill subdivision. The trial court further awarded to Wife one half of the money derived from the sale of cattle, less expenses, totalling $2,843. The trial court also awarded to Wife her retirement with American Olean. In dividing the marital estate, Wife received $185,381 in marital assets.

In the trial court's division of marital property, Husband was awarded the Jane Cove Property and four lots in the Timberhill subdivision. In addition, Husband was awarded the 104 acre farm, valued at $52,000. The trial court awarded Husband his retirement with Koppers Industries. Husband received $181,753 in marital assets. The trial court did not grant Wife's request for alimony or attorney's fees. Wife now appeals the decision of the trial court.

On appeal, Wife argues that the evidence preponderates against the trial court's division of marital property, awarding her only 50.5%. Wife asserts that the trial court did not adequately consider the fact that her job is at risk and that Husband dissipated marital assets. Wife also contends that the trial court erred in declining to award her alimony and attorney's fees. On appeal, Husband seeks attorney's fees for this appeal.

Appellate review of a division of marital property is *de novo* upon the record with a presumption of the correctness of the trial court's findings of fact. Tenn. R. App. P. 13(d); *see also Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984); *Dalton v. Dalton*, 858 S.W.2d 324, 327 (Tenn. App. 1993). The trial court's decision on the distribution of marital property is presumed correct unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *see also Wallace*, 733 S.W.2d 102, 107 (Tenn. App. 1987). A trial court has wide discretion in the manner in which marital property is divided, and its decision is accorded great weight on appeal. *Wade v. Wade*, 897 S.W.2d 702, 715 (Tenn. App. 1994); *see also Wallace*, 733 S.W.2d 102 at 107.

Wife first argues that the trial court erred in dividing marital property and that she should

have been awarded more than one half of the marital property. Wife asserts that the trial court failed to consider that her position at American Olean is at risk. Wife notes that she does not have a college degree and that her computer skills are limited. She asserts that these limitations would make it difficult for her to acquire other employment if her position at American Olean were terminated.

By statute, several factors are to be considered in dividing marital property:

(c) In making equitable division of marital property, the court shall consider all relevant factors including:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5) The contribution of each party to the acquisition, preservation, appreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party;  and

(10) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c) (1996).  "Vocational skills" and "employability" are two of a number of factors considered in dividing marital property. *See id*.

In this case, the parties were married fourteen years. Wife received approximately fifty percent of the marital estate. As part of her award, Wife received the marital home and the equity in the home, which was owned by Husband prior to the marriage. There is no mortgage on this

property. Overall, taking into consideration the risk to Wife's job as well as the other statutory factors, we do not find that the trial court abused its discretion in its division of the marital estate.

Wife next argues that the trial court erred in disregarding Husband's dissipation of marital assets in anticipation of divorce. She alleges that Husband sold cattle for $11,900 and at trial represented that the sale of the cattle yielded $5,686. Husband testified at trial that he liquidated the cattle business owned by the parties and paid expenses incurred in the business. Wife presented no countervailing evidence that Husband utilized the proceeds from the sale of the cattle for anything other than expenses of the cattle business.

Wife also contends that Husband represented that Store-O-Matic was no longer operating, but nevertheless Husband continued to write checks for business expenses for Store-O-Matic in 1995 and 1996. Husband testified that Store-O-Matic ceased the grain operation several years prior to the commencement of the divorce proceedings. Husband testified that after the grain operation ended he sold the storage bins on the property and continued to incur expenses in its operation, such as taxes for 1996. It is undisputed that Husband gave Wife $8,750, half of the proceeds from the sale of Store-O-Matic. Wife presented no evidence to support her argument that Husband may continue to receive profits from the Store-O-Matic business.

At trial, Wife presented testimony from David Pearson ("Pearson"), a certified public accountant, who testified that he reviewed the parties' income tax returns and bank statements for 1992, 1993, and 1994. Pearson testified that the parties' bank accounts contained $65,500 which was not reported on the 1994 tax return. Husband explained that he borrowed this money from a lending institution to finance the building of a house. Husband testified that the loan proceeds were deposited in a bank account and used for expenses incurred in building the house. Overall, the evidence presented by Wife to support her allegation that Husband dissipated marital assets was inconclusive at best.

Wife also contends on appeal that she is the "wronged spouse," arguing that Husband committed adultery and perjured himself regarding the length of time he had been having an affair. However, Tennessee Code Annotated § 36-4-121(a)(1) provides that marital property should be divided equitably without regard to fault. *See* Tenn. Code Ann. § 36-4-121(a)(1) (1996).

4

Considering the record as a whole, including the evidence that Wife's job is at risk, the inconclusive evidence that Husband dissipated marital assets, and the property awarded to both parties in the decree, we do not find that the trial court abused its discretion in its division of the marital estate. The trial court's division of marital property is affirmed.

Wife also raises on appeal the issue of alimony. Guidelines for the determination of alimony are set forth in Tennessee Code Annotated § 36-5-101(d)(1). The trial court is afforded wide discretion concerning the award of alimony, and an appellate court should reverse the trial court's findings only in instances in which this discretion "has manifestly been abused." *Hanover v. Hanover*, 775 S.W.2d 612, 617 (Tenn. App. 1989); *see Ford v. Ford*, 952 S.W.2d 824, 827 (Tenn. App. 1996); *Herrera v. Herrera*, 944 S.W.2d 379, 388 (Tenn. App. 1996); *Ingram v. Ingram*, 721 S.W.2d 262, 264 (Tenn. App. 1986).

As with the division of marital property, a similar list of factors is considered in making an award of alimony. *See* Tenn. Code Ann. § 36-5-101(d)(1) (Supp. 1998). It has long been recognized that the "[n]eed of the obligee spouse and the obligor's spouse's ability to pay are the two most important factors in determining the appropriate amount of alimony, if any." *Barnhill v. Barnhill*, 826 S.W.2d 443, 455 (Tenn. App. 1991) (citing *Campanali v. Campanali*, 695 S.W.2d 193 (Tenn. App. 1985); *Hall v. Hall*, 772 S.W.2d 432 (Tenn. App. 1989)).

Wife contends on appeal that the trial court erred in declining to award her alimony because of the precarious status of her job. A similar issue was addressed in *Lawson v. Lawson*, in which the wife had limited formal education and work experience except for employment in the business owned by her husband's father. *Lawson v. Lawson*, No. 03A01-9709-CH-00406, 1998 WL 251757, at *2 (Tenn. App. May 20, 1998); *see also Robinette v. Robinette*, 726 S.W.2d 524 (Tenn. App. 1986). The trial court made no award of alimony. *Lawson*, 1998 WL 251757, at *1. The appellate court noted that the Wife had no present need for alimony, and that the husband had no present ability to pay alimony. *Id.* at *2. However, it also acknowledged the unique circumstances in which the wife relied on her father-in-law for employment. *Id.* Relying on the "other factors" provision of Tennessee Code Annotated § 36-5-101(a)(1)(L), the appellate court held that the appropriate way to address the situation was to reserve the issue of alimony in the final judgment. *Id.* at *3 (citing *Robinette*, 726 S.W.2d at 525).

In this case, Wife put on evidence that there was reason for concern about whether she would

be laid off. However, at the time of the trial, she was employed, the parties' annual compensation was comparable, and Wife received slightly more than half the marital estate in the division of marital property. As of the time of trial, Wife had no need for alimony. Reserving the issue of alimony in the final judgment is a remedy that is sparingly used in cases involving unique circumstances. While Wife has reason to be concerned about the status of her job, we find that her circumstances are not as compelling as those in *Lawson*, and that the trial court did not abuse its discretion in declining to award alimony or in failing to reserve the issue of alimony in the final judgment. The decision of the trial court is affirmed on this issue.

Wife appeals the trial court's failure to award attorney's fees on her behalf. The trial court has wide discretion when awarding attorney's fees, and appellate courts will not interfere "unless there has clearly been an abuse of that discretion." *Garfinkel v. Garfinkel,* 945 S.W.2d 744, 748 (Tenn. App. 1996) (citing *Smith v. Smith*, No. 02A01-9109-CH-00209, 1993 WL 90378, at *6 (Tenn. App. 1993)). Considering the record as a whole, we find that the trial court did not abuse its discretion in declining to award Wife attorney's fees.

Finally, Husband seeks attorney's fees for this appeal. Under the facts and circumstances of this case, we find that, although Wife was not successful on appeal, she had a reasonable basis for this appeal, and we decline Husband's request for attorney's fees on appeal. *See Long v. Long*, 968 S.W.2d 292, 295 (Tenn. App. 1997).

The decision of the trial court is affirmed. Costs are taxed to the Appellant, for which execution may issue if necessary.

_____**HOLLY KIRBY LILLARD, J.**

**CONCUR:**

_____
**W. FRANK CRAWFORD, P. J., W.S.**

_____
**ALAN E. HIGHERS, J.**

6