IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 17, 2003 Session

## SHAYLE ISRAEL HIRSCHMAN v. SUANNE GOLDSTEIN HIRSCHMAN

**A Direct Appeal from the Circuit Court for Shelby County**
**No. 164219 R.D.     The Honorable George H. Brown, Jr., Judge**

---

**No. W2003-00008-COA-R3-CV - Filed December 10, 2003**

---

This divorce case involves issues concerning division of marital property and particularly the concepts of commingling and transmutation as applied to wife's separate property. The trial court found there had been no commingling or transmutation of wife's separate property and made a division of the marital property accordingly. Husband appeals. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

C. Suzanne Landers and Vicki J. Singh of Memphis For Appellant, Shayle Hirschman

J. Alan Hanover and Barbara B. Lapides of Memphis For Appellee, Suanne Goldstein Hirschman

**OPINION**

Plaintiff, Shayle Israel Hirschman ("Husband"), and defendant, Suanne Goldstein Hirschman ("Wife"), were married in Denver, Colorado on December 18, 1992. The parties' union produced one son, a minor at the time litigation began in this matter. At the time of the marriage, Wife had a separate Cash Management Account ("CMA account") with Merrill Lynch valued at $126,801.00. This account was financed by monies received by Wife as an inheritance from her deceased grandfather. The parties dispute whether Husband was aware of the financial source for Wife's CMA account. Over the course of their marriage, the parties' opened a joint checking account and a Joint Cash Management Account ("joint CMA account"). Both parties deposited at least part of their employment paychecks in the joint checking account.

At the heart of the dispute in this case are five checks or transfers made by Wife from either the parties' joint checking or joint CMA accounts to her separate CMA account. The first check, written by Wife on January 24, 1994, transferred $3,000.00 from the parties' joint checking account

to Wife's separate CMA account. Wife wrote another check against the parties' joint checking account on June 5, 1995, this withdrawal in the amount of $5,500.00. Wife again deposited these funds in her CMA account.

In September 1993, the parties purchased a home in Denver using $5,000.00 in funds from the parties' joint checking account as a deposit. Wife withdrew $35,000.00 from her CMA account to pay the remaining closing costs on the home. As a result of Husband's credit problems and the parties' subsequent inability to obtain a joint loan, the house was titled solely in Wife's name.

In April 1998, Wife received approximately $50,892.00 from the sale of Green Village, a family-owned shopping center in Dyersburg, Tennessee. Wife placed her share of the proceeds from this sale into the parties' joint checking account. On May 28, 1998, Wife wrote a check transferring $40,000.00 from the parties' joint checking account to her separate CMA account.

The parties decided to put their Denver home on the market in April 1998, in preparation for an eventual move to Memphis, Tennessee. Husband moved to Memphis in mid-April 1998, leaving Wife and the parties' child in Denver to finish packing and to make final preparations toward the sale of their Colorado home. On July 22, 1998, the parties' sold their home in Denver receiving net proceeds of $64,007.00. Wife initially deposited the proceeds from the sale of this home in the parties' joint checking account. Upon the sale of the Colorado home, Wife and child joined Husband at the parties' new home in Memphis. On July 2, 1998, Wife withdrew $45,622.00 from her CMA account to pay the closing cost on the parties' Memphis residence. Approximately one month later, on August 5, 1998, Wife wrote a check against the parties' joint checking account for $50,000.00, and deposited said funds in her separate CMA account.

The value of Wife's CMA account increased "tremendously" in November 1998 as a result of inheritance received by Wife upon her father's death. On December 8, 1998, Wife made a final transfer of $6,558.00 from the parties' joint CMA account to her separate CMA account.

On November 1, 1999, Husband filed a Complaint for Absolute Divorce, alleging irreconcilable differences and inappropriate marital conduct by Wife. Husband's complaint sought an equitable division of all marital assets and liabilities, an award of attorney's fees, and joint custody of the parties' minor son. Wife filed an Answer and Counter-Complaint for Divorce on December 9, 1999, alleging, as grounds for her counter-complaint, irreconcilable differences and inappropriate marital conduct by Husband. On May 15, 2002, the trial court entered an Order Pendente Lite directing Husband to pay Wife temporary child support in the amount of $811.00 per month. The court's order further reserved the issue of payment of any child support arrearages "which may have previously accrued since January 1, 2002 for determination at the trial of this matter."

On July 9, 2002, the trial court entered a Final Decree of Divorce, dissolving the parties' marriage and reserving the issues of "approval of the Permanent Parenting Plan, child support, the equitable division of the marital property of the parties, and attorney fees" for trial. A non-jury trial was held on July 24 and 25, 2002. On November 22, 2002, the trial court entered a "Final Decree, Findings of Fact and Conclusions of Law." The Final Decree, *inter alia*, explicitly adopted Wife's proposed Findings of Fact and Conclusions of Law, approved the Parenting Plan adopted by the parties' consent, fixed Husband's child support obligations at $888.49 per month beginning September 1, 2002, ordered Husband to pay child support arrearages in the total amount of $12,234.66, made an equitable division of the parties' marital property, and directed that "both parties shall pay their own attorneys, and that the court costs shall be divided between them."

With regard to Wife's separate CMA account, for which the decree listed a total value of $1,275,000.00,[1] the court found that Husband had no marital interest in the balance of said account, stating:

> The Court concludes that Wife's CMA account is, and shall remain, her separate property....
>
> The Court further concludes that Husband has no marital interest in the balance of the account. First, Husband's argument that Wife's occasional use of her separate funds to pay bills transmuted her account to marital property is contrary to Tennessee law. Any monies which Wife used to pay bills for the marriage was a gift from Wife to the marriage absent an intention of the parties to the contrary. It would be absurd for this Court to conclude that taking money from a separate account and using it for a marital purpose somehow changed the character of the money which remained in the separate account.
>
> Second, the recent case of *Langschmidt v. Langschmidt* decided by the Supreme Court sets out in one paragraph what the Court must consider to determine whether transmutation has occurred by commingling:
>
> > *6 In addition to the provisions of Tenn. Code Ann. § 36-4-121(b)(1)(b), courts in Tennessee have recognized two methods by which separate property may be converted into marital property: commingling and transmutation. Although this Court previously has not addressed commingling and transmutation,

---

[1] In his Affidavit of Income, Expenses, Assets and Liabilities, filed July 24, 2002, Husband valued Wife's CMA account at $1,444,962.00, as of April 30, 2002.

several opinions of the Court of Appeals have explained the concepts as follows:

> [S]eparate property becomes marital property [by commingling] <u>if inextricably mingled with marital property or with the separate property of the other spouse. If the separate property continues to be segregated or can be traced into its product, commingling does not occur</u>.... [Transmutation] occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property.... The rationale underlying these doctrines is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate. <u>The presumption can be rebutted by evidence of circumstances or communications clearly indicating an intent that the property remain separate</u>.

Although Wife did make five deposits into her separate CMA account from the parties joint account, the circumstances clearly show that these deposits were made to repay advances and loans which Wife made to the marriage from her separate funds. It is clear to the Court that not only did Wife not show an intention to use the account as a marital account, but the fact that she and Husband agreed to repay advances from this account demonstrates a clear intent by both parties that this account should remain a separate account. Therefore, the Court concludes that Wife's CMA account is her separate property and is not subject to equitable distribution.

(emphasis in original).

The court further found, ***inter alia,*** that neither Husband nor Wife made a direct or indirect contribution to the appreciation of Wife's CMA account over the course of the parties' marriage. Rather, the court concluded that all of the funds in Wife's CMA account were monies that she inherited from her grandfather and father, and attributed the appreciation of these funds "solely" to

-4-

the market conditions. The court additionally noted that the most significant appreciation in Wife's CMA account occurred after the parties separated. Based on these findings, the court concluded that Husband was not entitled to a marital interest in the appreciated value of Wife's CMA account.

Husband filed a Notice of Appeal of the court's November 22, 2002 decree on December 18, 2002. Shortly thereafter, Wife filed a motion for discretionary costs in the total amount of $4,264.55. On February 12, 2003, Husband gave notice of the filing of trial transcripts and trial exhibits, as well as the "Designation of the Deposition of Suzanne Goldstein Hirschman" to be a part of the record on appeal. Wife countered, filing a motion to strike or delete the designation of her discovery deposition from the record on appeal.

On March 7, 2003, the trial court entered an Order denying Wife's motion for discretionary costs. That same day, the court entered a second Order granting Wife's motion to strike her discovery deposition from the record on appeal.

Husband presents two issues and several sub-issues for review, which we condense and state as follows: (1) Whether the trial court erred in classifying Wife's individual CMA account, and the appreciation realized by this account over the course of the parties' marriage, as separate property; (2) Whether the trial court erred "in failing to appropriately consider the statutory factors in T.C.A. § 36-4-121(c), resulting in an inequitable division" of marital property; and (3) Whether the trial court erred in denying Husband's request for attorney's fees.

Wife presents the following additional issues, as stated in her brief:

> 1. Whether the trial court erred in sustaining the objection of Appellant Husband's counsel to cross-examination of Husband's expert witness, C.M. (Mickey) Ison, by Appellee Wife's counsel, as to Mr. Ison's statement that he could not distinguish where various deposits originated and therefore was of the opinion that marital funds had been inextricably mingled with Appellee Wife's separate property....
>
> 2. Whether the direct testimony of an expert witness may be considered on appeal when, based on the improper objection of the proponent of the witness, the trial court has denied counsel for the opposing party the right to cross-examine that witness on the issue sought to be proved.
>
> 3. Whether or not an expert may be permitted to testify that he cannot distinguish between jointly held and separately held funds in an account, thereby stating in effect the legal conclusion that the funds are inextricably mingled.

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. *See* Tenn. R. App. P. 13(d).

**I.**

Husband's first issue for consideration is whether the trial court erred in designating Wife's CMA account as her separate property. Husband challenges the court's ruling on two fronts, alleging: (1) that the trial court erred in determining that Husband was not entitled to a share of the total balance of Wife's CMA account or; (2) in the very least, Husband was entitled to a share of the appreciated value of Wife's CMA that accrued during the course of the parties' marriage.

Our analysis of this issue necessarily begins with T.C.A. § 36-4-121(b) (Supp. 2003), which states, in pertinent part:

> (1)(A) "Martial property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce ... and including any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date....
>
> (B) "*Marital property" includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation*, and the value of vested and unvested pension, vested and unvested stock option rights, retirement or other fringe benefit rights relating to employment that accrued during the period of the marriage.
>
> \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
>
> (D) As used in this subsection, "substantial contribution" may include, but not be limited to, the direct or indirect contribution of a spouse as homemaker, wage earner, parent or family financial manager, together with such other factors as the court having jurisdiction thereof may determine.
>
> \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

(2) "Separate property" means:

      (A) All real and personal property owned by a spouse before marriage, including, but not limited to, assets held in individual retirement accounts (IRAs) as that term is defined in the Internal Revenue Code of 1986, as amended;

      (B) Property acquired in exchange for property acquired before the marriage;

      (C) Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1);

      (D) Property acquired by a spouse at any time by gift, bequest, devise or descent.

(emphasis added).

Husband contends that Wife transferred funds from the parties' joint checking account or joint CMA account to her separate CMA account on five separate occasions during the course of their marriage. Husband fixes the total amount of these transfers at $105,058.00. Wife admits to making these transfers. While there is no dispute that Wife's CMA account was her separate property prior to the parties' marriage, Husband asserts that Wife's practice of transferring funds from the parties' joint checking account or joint CMA account to her individual CMA account converted the balance of Wife's account from separate to marital property. Husband enlists the doctrines of commingling and transmutation as a basis for his assertion.

"[C]ourts in Tennessee have recognized two methods by which separate property may be converted into marital property: commingling and transmutation." *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 747 (Tenn. 2002). The Court said:

> Although this Court previously has not addressed commingling and transmutation, several opinions of the Court of Appeals have explained the concepts as follows:
>
> > [S]eparate property becomes marital property [by commingling] if inextricably mingled with marital property or with the separate property of the other spouse. If the separate property continues to be segregated or can be traced into its product, commingling does not occur.... [Transmutation] occurs when separate property is treated in such a way

as to give evidence of an intention that it become marital property... The rationale underlying these doctrines is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate. This presumption is based also upon the provision in many marital property statutes that property acquired during the marriage is presumed to be marital. The presumption can be rebutted by evidence of circumstances or communications clearly indicating an intent that the property remain separate.

2 Homer H. Clark, *The Law of Domestic Relations in the United States* § 16.2 at 185 (2d ed. 1987); *Lewis v. Frances*, No. M1998-00946-COA-R3-CV, 2001 WL 219662, at *8, 2001 Tenn. App. LEXIS 140, at *24-25 (Tenn. Ct. App. Mar. 7, 2001), *perm. app. denied* (Tenn. Oct. 8, 2001); *Sartain v. Sartain*, No. 03A01-9707-CH-00297, 1998 WL 751462, at *4, 1998 Tenn. App. LEXIS 722, at *9 (Tenn. Ct. App. Oct. 29, 1998); *Hofer v. Hofer*, No. 02A01-9510-CH-00210, 1997 WL 39503, at *3-4, 1997 Tenn. App. LEXIS 74, at *8 (Tenn. Ct. App. Feb. 3, 1997); *Pope v. Pope*, No. 88-58-II, 1988 WL 74615, at *3, 1988 Tenn. App. LEXIS 449, at *7-8 (Tenn. Ct. App. July 20, 1988)).

*Id.*

Because an analysis of Husband's commingling and transmutation arguments requires an examination of the same facts and circumstances, we will consider both doctrines as part of a single analysis. To begin, we note that the trial court expressly rejected Husband's assertions that he was entitled to a share of the balance of Wife's CMA account pursuant to the doctrines of commingling and transmutation on the following grounds:

The Court will next address Husband's claim that the Wife's separate CMA account is marital property because there has been "commingling" of the parties' marital funds with her separate account and/or that her separate account has been used to pay marital debts. Husband places two theories before the Court. The first theory involves the fact that on many occasions the Wife withdrew money from her separate account and used it directly to pay marital debts. Exhibit 7, prepared by the Husband's expert, shows the Wife's withdrawals from her separate account both before and after the parties separated in 1999. On a few occasions, Wife has withdrawn money from her separate account and placed it in the parties' joint account and then paid marital debts. Husband maintains that this

activity somehow "tainted" the balance of the CMA account, therefore transmuting the entire CMA account to marital property. The Court finds that Husband has already received the benefit of any such funds which Wife withdrew from her CMA account and used to pay marital debts. The fact that one spouse may make a marital gift to the family from his or her separate funds cannot change the character of the funds that remain. In this case, the Husband has already received the benefit of these gifts. To claim that in addition to these benefits, he now is the owner of what is left of her inheritance is not in conformity with the law of this State.

**************************************************

Although Wife did make five deposits into her separate CMA account from the parties' joint account, the circumstances clearly show that these deposits were made to repay advances and loans which Wife made to the marriage from her separate funds. It is clear to the Court that not only did Wife not show an intention to use the account as a marital account, but the fact that she and Husband agreed to repay advances from this account demonstrates a clear intent by both parties that this account should remain a separate account. Therefore, the Court concludes that Wife's CMA account is her separate property and is not subject to equitable distribution.

To adequately analyze Husband's assertion that Wife's CMA account became marital property pursuant to the doctrines of commingling and transmutation, we must examine each of the five checks or transfers written or made by Wife between January 1994 and December 1998. The first two checks written by Wife against the parties' joint checking account with Colorado National Bank are dated January 24, 1994 and June 5, 1995, respectively. The January 24, 1994 check transferred $3,000.00 from the parties' joint account to Wife's CMA account. The second check, dated June 5, 1995, transferred $5,500.00 to Wife's CMA account. During her testimony, Wife conceded that she could not recall the specific nature and purpose for these transfers except to explain that the transfers were made to repay Wife for loans that she made to the marital estate. Upon further questioning, Wife stated:

> Q. Let me ask you this question: Have you ever taken any money out of the joint account other than to repay yourself for a loan or advancement that you made to the family?
>
> A. No, sir.

Wife's explanation for the transfers is unrefuted. Moreover, in the "Findings of Fact and Conclusions of Law" memorandum drafted by Wife and adopted by the trial court as part of its Final

Decree, the trial court rejected Husband's theories of commingling and transmutation with regard to the monies transferred from the parties' joint account to Wife's CMA account pursuant to the January 24, 1994 and June 5, 1995 checks, concluding that, "based on [Wife's] testimony, the Court finds that she did not have a practice of transferring money from the parties' joint account into her separate account except when it was required to repay advances or loans she had made to the marriage." We note that when the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses in their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *See McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997). The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *See id.*; *In re Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997).

Recognizing that the trial judge was in a better position to observe and critique the manner, demeanor, and testimony of the witnesses in this matter, and because we find no evidence in the record to preponderate against the trial court's findings, we find that the trial court properly determined that the January 24, 1994 and June 5, 1995 checks written by Wife against the parties' joint checking account did not amount to a commingling or transmutation of funds such as to convert Wife's CMA account from separate to marital property.

The third check involved in this dispute was written by Wife on May 28, 1998, transferring a total of $40,000.00 from the parties' joint checking account with U.S. Bank to her separate CMA account. To briefly reiterate, the record indicates that Wife received a check for approximately $50,892.00 in April 1998, representing her share of the proceeds from the sale of Green Village, a family-owned shopping center in Dyersburg, Tennessee. Wife placed her share of the proceeds from this sale into the parties' joint checking account. On May 28, 1998, Wife wrote a check transferring $40,000.00 from the parties' joint checking account to her separate CMA account.

Wife testified that she was in Denver with her infant son when she received this check. Wife noted that at the time she received the check, she was busy trying to finalize the sale of the parties' Colorado home and finish packing for her family's move to Memphis. Due to concerns regarding the safety and safe-keeping of the check, Wife deposited the money in the parties' joint checking account. Wife testified:

> Q. When you got the check, what did you do?
>
> A. I deposited it into our joint [checking] account.
>
> Q. Was it your intention to make a marital gift of that money to Mr. --
>
> A. No.

-10-

Q. Why did you – why didn't you just keep it in your purse until you got home?

A. I was in the midst of all these things going on, and I didn't want to lose the check. And I knew I would be home in May, and I knew I could deposit a portion of the check as soon as I got there to Merrill Lynch.

Q. All right. Your [separate CMA] account is in Memphis. You are in Colorado. Is that right?

A. Yes, sir.

Q. All right. When you got to Memphis in May did you withdraw some of that money?

A. Yes.

Q. On May 28?

A. Yes, I did.

Q. How much did you withdraw?

A. I withdrew 40 thousand dollars.

Q. Okay. And you left ten thousand nine hundred dollars in the account.

A. Yes, sir.

Q. Joint account?

A. Yes, sir.

Q. Why did you do that?

A. To make a gift to my family.

Q. So [you] both used that money up. Didn't you?

A. Yes, we did.

The trial court found favor in Wife's testimony, concluding:

> On a temporary basis, and solely as a matter of convenience, Wife deposited the $50,900.00 check into the parties' joint bank account in Denver. Just six weeks later, on May 28, 1998, when Wife arrived in Memphis, she transferred $40,000.00 from the joint account to her separate CMA account. The Court finds that at the time of the transfer, Wife did make a marital gift of the remaining $10,900.00. The Court further finds that there was no intention by Wife to use the $40,000.00 for a marital purpose or to make a marital gift of this amount. Therefore these funds were not martial funds when deposited to her CMA account.

Again, where the resolution of the issues in a case depends upon the truthfulness of a witness, we give great weight to the credibility accorded by the trial court to the testimony of the individual witnesses. In this instance, we find no evidence in the record to preponderate against the trial court's findings that Wife temporarily deposited $50,892.00 in non-marital funds into the parties' joint account for safe-keeping until such time as she could transfer the money to her CMA account. We therefore find that the trial court correctly ruled that the May 28, 1998 check written by Wife, transferring a total of $40,000.00 from the parties' joint checking account to her separate CMA account, did not convert Wife's CMA account, and the funds contained therein, from separate to marital property pursuant to the doctrines of commingling or transmutation.

The fourth check involved in this dispute was written by Wife against the parties' U.S. Bank account on August 5, 1998, in the total amount of $50,000.00. The record in this case is undisputed that Wife withdrew $35,000.00 from her CMA account in 1993 and used this money toward the purchase of the parties' Denver, Colorado home. The record is further undisputed that Wife withdrew $45,622.00 from her CMA account to pay the closing costs on the parties' Memphis residence in July 1998.

The parties' sold their Denver home in late July 1998 receiving net proceeds of $64,007.00. Wife deposited the sale proceeds in the parties' joint checking account. On August 5, 1998, Wife wrote a check against the parties' joint checking account for $50,000.00, and deposited said funds in her separate CMA account. When questioned regarding the purpose and nature of Wife's transfer, Husband acknowledged that Wife transferred the money with his permission as a repayment of the money that she advanced from her separate CMA account toward the purchase of both homes:

> Q. ...So she told you and you discussed with her that it was fair that she pay herself back [$50,000.00]. She didn't need to pay for both houses?
>
> A. Yes, sir.

Q. Isn't that right?

A. Yes, sir.

Q. And you agreed to that?

A. Yes, sir.

Q. That she could pay herself back because it was like a loan or an advancement?

A. Yes, sir.

Q. And you admit that?

A. Yes, sir.

On the basis of Husband' s above-cited testimony, we find that the evidence in the record supports the trial court's finding that Wife's August 5, 1998 transfer did not result in a commingling or transmutation of funds.

The fifth and final transaction relevant to this matter involved an internal transfer from the parties' joint CMA account to Wife's separate CMA account. During her direct examination testimony, Wife stated that she paid a $6,558.00 Visa credit card bill in October 1998, using funds from her separate CMA account. It is undisputed that this particular credit card bill was a marital debt. Wife explained her decision to use funds from her CMA account to pay the bill, stating:

Q. And why did you pay that Visa bill from your separate account? Why didn't you pay it from your – from y'all's joint account?

A. Because we didn't have enough money in our joint account.

Q. All right. Mr. Hirschman said that you did have enough money in your joint CMA account. Why didn't you pay it out of that?

A. I didn't typically pay bills out of our joint CMA account because I kept records of everything.

Q. Is that really an investment account?

A. Yes.

On December 8, 1998, Wife transferred $6,558.00 from the parties' joint CMA account to her separate CMA account. Wife testified that she transferred the money as a repayment for her October 1998 advancement:

> Q. All right. So what were you doing in December 8, 1998, when you wrote a check out of that CMA account?
>
> A. I reimbursed myself the sixty-five fifty-eight to go to my CMA account since I had paid it.
>
> Q. Paid yourself back?
>
> A. Exactly.
>
> Q. Because –
>
> A. I paid myself back for that.
>
> Q. Did Mr. Hirschman know that you made that advancement at the time?
>
> A. You know, I don't know if he knew or not.

Again, the trial court accorded great faith, weight, and credit to the Wife's testimony regarding the reason and intent behind this transfer. Finding no evidence in the record to preponderate against the court's ruling, we defer to the trial court's ruling.

For these reasons, we agree with the trial court's ruling that the five transfers made by Wife from January 1994 through December 1998 did not convert Wife's CMA account from separate to marital property. Quite candidly, we are simply unwilling to find that these transfers somehow converted the balance of Wife's CMA account from separate to marital property where the evidence indicates that Wife's CMA account was funded in overwhelming part by monies received via inheritance or from separate family investments, that Husband directly benefitted from Wife's use of these funds to pay marital debts, and where the transfers were made solely for the purpose of repaying Wife for temporary contributions or loans made from her separate account to provide for the needs of her family. Moreover, in the event Wife's transfers created a rebuttable presumption that a gift or gifts had been made to the marital estate, we find that Wife's accredited testimony that she did not intend these transfers as gifts rebutted any presumption otherwise.

We next examine Husband's assertion that he is, in the very least, entitled to a share of the appreciated value realized by Wife's separate CMA account during the course of the parties' marriage. Husband specifically contends that "the appreciation of Mrs. Hirschman's CMA account during the course of the marriage is marital property because each party substantially contributed to its preservation *and* appreciation" as required by T.C.A. § 36-4-121(b)(1) (emphasis in original).

To briefly reiterate, T.C.A. § 36-4-121(b)(1) defines marital property to include any increase in value to the separate property of a party during the course of a marriage *where both parties to the marriage contributed to the preservation and appreciation of the property*. The evidence in the record is undisputed that Wife's CMA account was valued at $126,801.00 at the time of the parties' marriage. The trial court calculated the value of Wife's CMA at the time of the parties' divorce as approximately $1,275,000.00. The court's calculation indicates an estimated appreciation in value of $1,148,199.00.

In its adopted Findings of Fact and Conclusions of law, the trial court found:

> ... Husband made no contribution, direct or indirect, which resulted
> in any appreciation of the value of Wife's CMA account. The Court
> also finds that Wife made no direct contribution to the appreciation
> of this account. Rather, the appreciation or increase in the value of
> Wife's account was solely as a result of market conditions.

We find no evidence in the record to preponderate against the trial court's finding that Husband made no substantial contribution to Wife's CMA account, either direct or indirect, which resulted in any appreciation in the value of said account. *Cf. Langschmidt v. Langschmidt*, 81 S.W.3d 741, 747 (Tenn. 2002) (Decision of Tennessee Supreme Court affirming the trial court's holding that Husband's non-IRA assets were his separate property where "the appreciation of Husband's non-IRA assets was entirely market driven," and where there was no "evidence that Wife substantially contributed to the preservation and appreciation of these assets."). While Husband's contribution to the marital estate as the primary wage earner may have been beneficial in the preservation and slight appreciation of Wife's CMA account, the evidence establishes that Wife's account increased in value by approximately $1,000,000.00 in November 1998 as a result of the inheritance she received from her father's death. On the basis of this evidence, we are unable to conclude that the appreciation realized in Wife's CMA account was the result of any substantial contribution from Husband.

We note further that Husband acknowledged on cross-examination that the limited advice that he gave Wife regarding the management of this account did not result in any appreciation in the value of the account, stating:

> Q. But now you say you did on one occasion tell her she ought to
> liquidate or sell some of her stock?

A.  Yes, sir.

Q.  All right.  Well, do you – do you claim that the – any appreciation that is in her stock was due to you?

A.  Yes, sir.

Q.  What do you claim that she has, more money, because of advice that you gave her?

A.  None.

Q.  None.  So you don't claim that any of the appreciation in her accounts was due to you; is that right?

A.  Not to my advice.

We again observe the trial court's rule on accrediting the testimony of witnesses. ***See McCaleb v. Saturn Corp.***, 910 S.W.2d 412, 415 (Tenn. 1995); ***Whitaker v. Whitaker***, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997); ***In re Estate of Walton v. Young***, 950 S.W.2d 956, 959 (Tenn. 1997).  In the instant case, it is apparent that the trial court accorded little credit to Husband's testimony regarding his contribution to the appreciation of Wife's CMA account.  Paying proper deference to the weight, faith, and credit given by the trial court to Husband's testimony, we find Husband's issue without merit.  The trial court did not err in finding Wife's CMA account, including the appreciation thereof, to be separate property.

**II.**

Husband's next issue for review presents the question of whether the trial court erred "in failing to appropriately consider the statutory factors in T.C.A. § 36-4-121(c), resulting in an inequitable division" of marital property.  Husband's objection to the trial court's division of marital property appears to be best summarized by the following statement from his brief to this Court:

> Mr. Hirschman respectfully submits that the preponderance of the evidence does not support the Trial Judge's valuation of the marital residence at $190,000 or the resulting inequitable property division.  Mr. Hirschman further argues that the assessment of child support arrearages to be offset against his limited equity in the marital residence was inappropriate.  Rather, consideration should have been given to offsetting the "trust" account, funded in part by unauthorized withdrawals in the amount of at least $9100 from the parties' joint account.

-16-

Although there is a presumption that marital property is owned equally, there is no presumption that marital property should be divided equally. ***Bookout v. Bookout***, 954 S.W.2d 730, 731 (Tenn. Ct. App. 1997). Thus, an equitable division of the marital property need not be an equal division of the property. ***Id***. A trial court is afforded wide discretion when dividing the marital property, and its distribution will be given "great weight" on appeal. ***Ford v. Ford***, 952 S.W.2d 824, 825 (Tenn. Ct. App. 1997). Guidelines for the equitable division of marital property are set forth in T.C.A. § 36-4-121(c) (Supp. 2003). That statute provides, in pertinent part:

> (c) In making equitable division of marital property, the court shall consider all relevant factors including:
>
> (1) The duration of the marriage;
>
> (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
>
> (3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
>
> (4) The relative ability of each party for future acquisitions of capital assets and income;
>
> (5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
>
> (6) The value of the separate property of each party;
>
> (7) The estate of each party at the time of the marriage;
>
> (8) The economic circumstances of each party at the time the division of the property is to become effective;
>
> (9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;
>
> (10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

We note, initially, that Husband's brief to this Court appears to suggest that the trial court did not appropriately consider factors (2), (4), (6), and (8) listed in T.C.A. § 36-4-121(c). However, despite Husband's apparent assertion that the trial court did not appropriately consider the aforementioned statutory factors, he does not explain how these factors support his argument that the trial court's division of marital property was inequitable.

The trial court's Final Decree of Divorce states that the court considered the following evidence in reaching its decision in this matter: the sworn testimony of the parties and their witnesses, depositions and exhibits entered into evidence, and the submissions "by counsel for each party to the Court of Proposed Findings of Fact and Conclusions of Law." Upon our reading of the record, we find that the court had sufficient evidence before it with regard to these factors. We further find no evidence to indicate that the trial court did not properly consider this evidence in making an equitable distribution of the marital property

Having already found that the trial court properly characterized Wife's CMA account as separate property, we note that the court divided the parties' marital property as follows:

> The Court further concludes that the marital property should be divided as follows: Each party shall keep their own automobiles. The Husband shall receive the entire joint CMA account in the amount of $8,400. Wife shall keep the personal property in the house[2] and the house and the Husband shall keep his personal property. Wife will pay the Husband the sum of $15,000 as his division of the equity in the marital residence. The Husband shall keep the funds he withdrew from his retirement account in the approximate amount of $11,600, but any amount due from the Wife to the Husband shall be offset by his arrearage in child support.
>
> The remaining Merrill Lynch account which was established for the benefit of the parties' minor son shall remain in Wife's custody, as trustee, and shall be used only for the benefit of the minor child. Wife shall be enjoined from using the funds in the account for any purpose other than for the use and benefit of the minor child.

To properly address Husband's allegation that the trial court's distribution of marital property was inequitable, we must first consider his assertion that the trial court erred in its valuation of the

---

[2] The court approximated the value of the household furnishings as $10,000.00. We note that Husband's appraisal expert, Mr. Len Finch, appraised the "furniture and household goods" remaining in the marital home at a total value of $10,606.50. The trial court's finding is within a range of reasonableness.

marital home. At trial, Wife introduced Mr. Joe Burrow ("Burrow") as a real estate appraisal expert. Burrow testified that he appraised the parties' home on September 27, 2001 at a value of $188,000.00. Despite the fact that his appraisal was conducted approximately ten months prior to the trial, Burrow testified that he felt his appraisal accurately reflected the value of the home at the date of trial.

In response to Burrow's testimony, Husband entered as an exhibit the deposition testimony of his real estate appraisal expert, Mr. Elvin Ray Hoover ("Hoover"). Hoover testified that he performed a residential appraisal of the parties' home prior to trial. Hoover's appraisal calculated the market value of the parties' marital home as $205,000.00.

Upon consideration of the experts' testimony and appraisals, the trial court valued the marital residence at $190,000.00. The court noted that the marital home "has a mortgage in the amount of $125,000, so that the equity is approximately $65,000." The court determined that Wife was to be solely responsible for the remaining mortgage payments.

It is settled law in Tennessee that "[t]he value of a marital asset is determined by considering all relevant evidence regarding value." **Wallace v. Wallace**, 733 S.W.2d 102, 107 (Tenn. Ct. App. 1987) (citations omitted). "The burden is on the parties to produce competent evidence of value, and the parties are bound by the evidence they present." **Id**. (citations omitted). "Thus the trial court, in its discretion, is free to place a value on a marital asset that is within the range of the evidence submitted." **Id**. (citations omitted). In light of these rules, we find that the trial court did not err in assigning a value to the parties' marital home that fell within the range of the evidence submitted at trial by the parties' respective experts.

Having found that the trial court correctly valued the parties' marital residence, we now consider whether the trial court's distribution of marital property was, in fact, inequitable. Again, in light of the trial court's proper characterization of Wife's CMA account as separate property, we are left with marital property consisting of a marital home valued at $190,000.00 with approximately $65,000.00 in equity, automobiles, $10,000.00 worth of personal property in the home, a joint CMA account valued at approximately $8,400.00, Husband's furniture and fixtures, and Husband's retirement account worth approximately $11,600.00

To reiterate, pursuant to the trial court's Final Decree of Divorce, Wife received her automobile, the marital home, $50,000.00 in equity in the marital home, and the $10,000.00 in personal property. We note, additionally, that the trial court awarded Wife the Merrill Lynch account established as a trust for the benefit of the parties' minor child, as marital property. Despite the trial court's designation of this account as marital property, we find that the account should not be considered as marital property because it was established solely for the use and benefit of the minor child. The court's Final Decree enjoins Wife from using the funds in this account for any other purpose. Therefore, despite Husband's contention to the contrary, neither Wife's separate CMA account nor the trust account established for the parties' minor child should be considered part of Wife's marital property distribution.

As his share of marital property, Husband received his automobile(s), the parties' joint CMA account, $15,000.00 in equity in the parties' marital home, and his retirement account. Moreover, we note that Husband is exempted from liability on the remaining mortgage payments on the marital home.

From our review of the entire record in this case, we find that the evidence does not preponderate against the trial court's findings nor does the evidence indicate that the trial court abused its discretion in making a division of the marital property. We find the settlement reached by the trial court to be fair and just under the circumstances, and therefore consider Husband's allegation that the trial court erred in making an inequitable division of the marital property to be without merit.

To briefly address Husband's vague assertion that the trial court erred in directing the offset of Husband's due and owing child support obligations against his "limited equity in the marital residence," we note that Husband fails to cite to any case law in support of his allegation. Moreover, we contend that Husband's child support debts are entitled to first priority in collection, and are aware of no authority that prohibits the court from offsetting these obligations against Husband's marital property award.

Having already determined that the Merrill Lynch account established as a trust for the parties' minor son is not marital property, we need not consider Husband's assertion that said account should be offset against Wife's share.

For these reasons, we find that the trial court properly considered the factors set forth in T.C.A. § 36-4-121(c) in making a distribution of the parties' marital property, and further find the court's distribution to be equitable.

### III.

Husband's final issue for review asks this Court to determine whether the trial court erred in denying his request for attorney's fees.

The trial court is afforded discretion concerning whether to award attorney's fees in a divorce case. **Long v. Long**, 957 S.W.2d 825, 827 (Tenn. Ct. App. 1997). On appeal, an appellate court shall not interfere with the trial court's decision except upon a showing of an abuse of that discretion. **Id**. Upon our review of the record in this matter, we find no evidence to indicate that the trial court abused its discretion in refusing to award Husband attorney's fees.

### IV.

In light of our prior rulings in this matter, we pretermit Wife's issues.

### V.

In conclusion, we affirm the Final Decree of the trial court in all respects. Costs of this appeal are assessed against plaintiff, Shayle Israel Hirschman, and his sureties.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.