# IN THE COURT OF APPEALS OF TENNESSEE
# AT KNOXVILLE
June 29, 2015 Session

## TAMMY MCNABB v. THOMAS DEAN MCNABB

**Appeal from the Circuit Court for Hamilton County**
**No. 12-D-1584      W. Jeffrey Hollingsworth, Judge**

---

### No. E2014-02424-COA-R3-CV-FILED-AUGUST 20, 2015

---

This divorce action involves a marriage of nineteen years' duration. The deed to the parties' marital residence, purchased during the marriage, reflected title in the names of the husband and his mother. Also during the marriage, the husband had purchased a vacant lot adjacent to the marital residence, and the parties had acquired a boat. Following a bench trial, the trial court determined that the husband's one-half ownership interest in the marital residence was marital property subject to division. The trial court also determined that the adjacent lot and boat were marital assets. An equitable division was ultimately ordered. The trial court further awarded the wife alimony *in futuro*, determining that she had demonstrated a need for alimony and that the husband maintained an ability to pay. The husband has appealed. Discerning no error, we affirm the trial court's judgment in all respects. The wife has sought an award of attorney's fees incurred in defending this appeal. In our discretion, we remand this matter to the trial court for determination of a reasonable award of attorney's fees to the wife.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., C.J., and D. MICHAEL SWINEY, J., joined.

John T. Rice, Chattanooga, Tennessee, for the appellant, Thomas Dean McNabb.

Catherine M. White, Chattanooga, Tennessee, for the appellee, Tammy McNabb.

**OPINION**

## I. Factual and Procedural Background

This divorce action was filed on August 6, 2012, by the plaintiff, Tammy McNabb ("Wife"), against the defendant, Thomas Dean McNabb ("Husband"). The parties were married in 1995 and separated in April 2012. No children were born of the marriage. In her complaint, Wife sought an equitable distribution of the parties' marital property as well as an award of spousal support. At the time of trial, the parties were both in good health, except that Wife had experienced a loss of hearing in both ears. Each party was self-employed, with Wife maintaining employment as a housekeeper and Husband owning an auto repair establishment as a sole proprietor. During the course of the divorce proceedings, Wife amended her complaint to add Husband's mother, Margaret McNabb ("Ms. McNabb"), as a party defendant, claiming that Husband had titled marital property in the name of Ms. McNabb in order to prevent Wife from receiving her equitable share of the equity therein.

A bench trial was conducted on August 22, 2014. At the hearing, Husband claimed that the parties' marital residence on Lindy Lane in Hixson, which was purchased during the marriage, was solely owned by Ms. McNabb. He also asserted that a 1990 Chapparal boat purchased by Ms. McNabb and utilized by the parties during the marriage belonged solely to Ms. McNabb. Husband admitted that he had purchased an unimproved lot of real property adjacent to the marital residence during the marriage for $2,500.

The warranty deed for the marital residence, made an exhibit at trial, evinced that the home was actually titled to Ms. McNabb <u>and</u> Husband as tenants in common. According to Wife, the parties were concerned that they could not qualify for a mortgage because they were both self-employed. Consequently, Ms. McNabb was asked to purchase the home for them and obtain the mortgage in her name. As Wife explained, she and Husband repaid the monthly payments to Ms. McNabb in cash. Wife asserted that a similar arrangement was instituted regarding the watercraft. Wife maintained that she and Husband owned and paid for the marital residence and boat, although she could produce no records to demonstrate that such payments had been made. Wife did, however, present insurance documents for the boat, which reflected Husband and Wife as the respective insured parties.

Husband and Ms. McNabb testified that Ms. McNabb chose to purchase the marital residence of her own volition (even though she already owned a home) and that she simply allowed the parties to reside there free of charge. The two denied that the parties ever paid Ms. McNabb any monies for the marital residence or the boat.

2

According to Ms. McNabb, she elected to have Husband's name placed on the deed to the marital residence so that he could inherit title upon her passing. To Wife's credit, the proof demonstrated that the parties undertook extensive renovations on the marital residence, some of which work was performed by the parties themselves. Although Wife testified that she and Husband paid all expenses related to materials and labor, Husband and Ms. McNabb asserted that Ms. McNabb in fact paid those costs. Husband acknowledged, however, that his interrogatory responses contained the following statement: "I am asking the court to make an equitable division of all of our marital property, including the house that is in my name and my Mother's name."

Concerning the matter of spousal support, Wife related that she provided housecleaning services for various individuals and that her income fluctuated greatly. Wife acknowledged that her income from this employment had been, at most, $470 per week. Although she had applied for other types of employment, Wife stated that her lack of job skills and hearing impairment prevented her from securing a better job. Husband testified that his income from the car repair business also fluctuated dramatically, causing him to acquire loans from his mother on a regular basis. Husband's bank statements demonstrated that in 2012, he deposited an average of $7,100 per month, or $85,000 per year, into his business account. In 2011, the parties' joint federal income tax return showed gross receipts for Husband's business in the amount of $71,264 with a corresponding net income of only $11,200. Similarly, in 2009, the parties' joint federal tax return indicated gross receipts for the business in the amount of $70,341 and a related net loss of $2,644. On his income and expense statement submitted to the trial court, Husband reported an average gross income in the amount of $900 per month.

Both parties valued the marital residence at $230,000 on their respective asset and liability statements. Similarly, each party listed the vacant lot as having a value of $5,000. An appraisal performed of the equipment located at Husband's business premises placed a value at $17,545. Although Husband indicated that he disagreed with this value, he provided no opinion as to the equipment's worth.

Upon the conclusion of trial, the court took the case under advisement and subsequently entered a memorandum order and final decree on September 4, 2014. Regarding the marital residence, the court noted that while the evidence was "confusing," the parties clearly improved the property during their residence there. In addition, the trial court found that by deed, the property was titled to Ms. McNabb and Husband, thereby providing Husband with a one-half ownership interest therein. As such, the trial court found that Husband's one-half interest constituted marital property subject to division. The trial court found the value of the home to be $230,000 and the mortgage balance to be $183,000, establishing a total equity value of $47,000. Pursuant to an

equitable division, the court determined the value of Wife's one-fourth interest in that equity to be $11,750.

With reference to additional assets, the trial court determined that the adjacent lot was marital property, valuing it at $3,750. While the court awarded the lot to Husband, Wife was awarded one-half of its value, or $1,875. The trial court also concluded that based on the documentary evidence presented at trial, Husband and Wife were the owners of the boat. The court ordered the watercraft to be sold and the proceeds divided equally.

Regarding alimony, the trial court found the parties' nineteen-year marriage to be of relatively long duration. The court also determined that while Wife had limited employment opportunities due to her hearing impairment and a modicum of job skills, Husband owned and operated his own business. As the court noted, however, it was "difficult to discern how hard he works at that business." The court observed that although Husband's tax returns demonstrated a net income of roughly $12,000 per year for Husband's business, "the Lindy Lane home, the Chaparral boat, and the vehicles owned by the parties point to a lifestyle a $12,000.00 income could never support." The court therefore concluded that Wife had established a demonstrated need for alimony and that Husband had the ability to pay such support.

Concerning the form of spousal support awarded, the trial court determined that rehabilitation was not practical for Wife because no evidence was presented regarding training that she could undergo to improve her income. The court thus awarded Wife $750 per month as alimony *in futuro*. Following entry of a final judgment, Husband filed a motion to alter or amend, which upon consideration, was denied by the trial court. The court did, however, amend the final judgment to dismiss Ms. McNabb from the action. Husband timely appealed.

## II. Issues Presented

Husband presents the following issues for our review, which we have restated slightly:

1. Whether the trial court erred in determining that the Lindy Lane residence was marital property.

2. Whether the trial court erred in its valuation of the Lindy Lane residence.

3. Whether the trial court erred in determining that the adjoining, unimproved lot on Lindy Lane was marital property.

4

4. Whether the trial court erred in its valuation of the vacant lot.

5. Whether the trial court erred in determining that the boat was marital property.

6. Whether the trial court erred in its award of alimony.

Wife presents an additional issue:

7. Whether Wife should receive an award of attorney's fees incurred in defending this appeal.


## III. Standard of Review

In a case involving the proper classification and distribution of assets incident to a divorce, our Supreme Court has elucidated the applicable standard of review as follows:

> This Court gives great weight to the decisions of the trial court in dividing marital assets and "we are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures." *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996). As such, when dealing with the trial court's findings of fact, we review the record de novo with a presumption of correctness, and we must honor those findings unless there is evidence which preponderates to the contrary. Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Because trial courts are in a far better position than this Court to observe the demeanor of the witnesses, the weight, faith, and credit to be given witnesses' testimony lies in the first instance with the trial court. *Roberts v. Roberts*, 827 S.W.2d 788, 795 (Tenn. Ct. App. 1991). Consequently, where issues of credibility and weight of testimony are involved, this Court will accord considerable deference to the trial court's factual findings. *In re M.L.P.*, 228 S.W.3d 139, 143 (Tenn. Ct. App. 2007) (citing *Seals v. England/Corsair Upholstery Mfg. Co.*, 984 S.W.2d 912, 915 (Tenn. 1999)). The trial court's conclusions of law, however, are accorded no presumption of correctness. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 744-45 (Tenn. 2002).

*Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007).

Further, as this Court has previously held:

> Because Tennessee is a "dual property" state, a trial court must identify all of the assets possessed by the divorcing parties as either separate property or marital property before equitably dividing the marital estate. Separate property is not subject to division. In contrast, Tenn. Code Ann. § 36-4-121(c) outlines the relevant factors that a court must consider when equitably dividing the marital property without regard to fault on the part of either party. An equitable division of marital property is not necessarily an equal division, and § 36-4-121(a)(1) only requires an equitable division.

*McHugh v. McHugh*, No. E2009-01391-COA-R3-CV, 2010 WL 1526140 at *3-4 (Tenn. Ct. App. Apr. 16, 2010) (internal citations omitted). *See also Manis v. Manis*, 49 S.W.3d 295, 306 (Tenn. Ct. App. 2001) (holding that appellate courts reviewing a distribution of marital property "ordinarily defer to the trial judge's decision unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence.").

Regarding valuation, this Court has explained:

> The value of marital property is a fact question. Thus, a trial court's decision with regard to the value of a marital asset will be given great weight on appeal. In accordance with Tenn. R. App. P. 13(d), the trial court's decisions with regard to the valuation and distribution of marital property will be presumed to be correct unless the evidence preponderates otherwise.

> The value of a marital asset is determined by considering all relevant evidence regarding value. The burden is on the parties to produce competent evidence of value, and the parties are bound by the evidence they present. Thus the trial court, in its discretion, is free to place a value on a marital asset that is within the range of the evidence submitted.

*Wallace v. Wallace*, 733 S.W.2d 102, 107 (Tenn. Ct. App. 1987) (internal citations omitted).

In regard to alimony determinations, our Supreme Court has "repeatedly and recently observ[ed] that trial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award." *See Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). The Court has further explained:

6

[A] trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors. As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision." *Kinard*, 986 S.W.2d at 234. Rather, "[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006). Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. This standard does not permit an appellate court to substitute its judgment for that of the trial court, but "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'" *Henderson*, 318 S.W.3d at 335 (quoting *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). Consequently, when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision.

*Id*. at 105-06 (other internal citations omitted).

## IV. Marital Residence

Husband asserts that the trial court erred in classifying his one-half interest in the marital residence as marital property and dividing a portion of the equity between the parties. Wife contends that the trial court correctly found that one-half of the equity in the marital residence was marital property, such that she was properly awarded one-fourth of the equity value. We agree with Wife.

Tennessee Code Annotated § 36-4-121 (2014) provides in pertinent part:

(a)(1) In all actions for divorce or legal separation, the court having jurisdiction thereof may, upon request of either party, and prior to any determination as to whether it is appropriate to order the support and maintenance of one (1) party by the other, equitably divide, distribute or

7

assign the marital property between the parties without regard to marital fault in proportions as the court deems just.

* * *

(b) For purposes of this chapter:

(1)(A) "Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date. In the case of a complaint for legal separation, the court may make a final disposition of the marital property either at the time of entering an order of legal separation or at the time of entering a final divorce decree, if any. If the marital property is divided as part of the order of legal separation, any property acquired by a spouse thereafter is deemed separate property of that spouse. All marital property shall be valued as of a date as near as possible to the date of entry of the order finally dividing the marital property.

(B) "Marital property" includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation, and the value of vested and unvested pension, vested and unvested stock option rights, retirement or other fringe benefit rights relating to employment that accrued during the period of the marriage.

(C) "Marital property" includes recovery in personal injury, workers' compensation, social security disability actions, and other similar actions for the following: wages lost during the marriage, reimbursement for medical bills incurred and paid with marital property, and property damage to marital property.

(D) As used in this subsection (b), "substantial contribution" may include, but not be limited to, the direct or indirect contribution of a spouse as homemaker, wage earner, parent or family financial manager, together with such other factors as the court having jurisdiction thereof may determine.

8

\* \* \*

(2) "Separate property" means:

(A) All real and personal property owned by a spouse before marriage, including, but not limited to, assets held in individual retirement accounts (IRAs) as that term is defined in the Internal Revenue Code of 1986, compiled in 26 U.S.C., as amended;

(B) Property acquired in exchange for property acquired before the marriage;

(C) Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1);

(D) Property acquired by a spouse at any time by gift, bequest, devise or descent . . . .

In the case at bar, neither party disputes that the marital residence was purchased during the marriage. The respective warranty deed introduced into evidence demonstrated that upon acquisition, the home was titled to Husband and his mother as tenants in common. We conclude that based on this proof, the trial court properly found that Husband held a one-half ownership interest in the property and that such one-half interest was marital property. *See* Tenn. Code Ann. § 36-4-121(b)(1)(A).

Husband contends, however, that the trial court erroneously determined Husband's one-half interest in the home to be marital property inasmuch as his name was placed upon the deed solely for "estate purposes." Husband cites no authority for this argument. The undisputed proof was that the property was purchased during the marriage and title was held by Ms. McNabb and Husband. Therefore, the trial court properly determined that Husband's one-half ownership interest in the home was marital property subject to division.

Regarding the value of the equity in the marital residence, the parties each valued the residence at $230,000 on their respective asset and liability statements. Husband presented no other proof regarding the value of the home. It was also undisputed that by the time of trial, the mortgage indebtedness was $183,000, thus establishing the value of the equity at $47,000, as found by the trial court. Wife was awarded one-fourth of that amount, or $11,750. On appeal, Husband contends that the evidence regarding value was

"speculative." We note, however, that Husband did not dispute the $230,000 value at trial. As this Court has previously explained:

> The value of a marital asset is determined by considering all relevant evidence regarding value. The burden is on the parties to produce competent evidence of value, and the parties are bound by the evidence they present. Thus the trial court, in its discretion, is free to place a value on a marital asset that is within the range of the evidence submitted.

*Wallace*, 733 S.W.2d at 107 (internal citations omitted). In this instance, the trial court placed a value on the marital residence that was distinctly within the range of evidence submitted. The evidence does not preponderate against the trial court's determination of value.

## V. Vacant Lot

Husband similarly argues that the trial court erred in awarding Wife one-half the value of the vacant lot adjacent to the marital residence. Husband asserts in his brief that the unimproved property was titled to Ms. McNabb. At trial, however, Husband acknowledged that he purchased the lot during the marriage for $2,500 and that he had paid the monthly payments. There was a dearth of evidence presented at trial that Ms. McNabb possessed any ownership interest in this property. Therefore, the court clearly did not err by awarding Wife a portion of the value of this marital property.

Regarding the value of the vacant lot, Wife asserts that the parties stipulated such value to be $5,000. Each party listed the parcel on his or her statement of assets and liabilities as having a value of $5,000. Husband testified, however, that he purchased the lot for $2,500. The trial court valued the lot at $3,750 and awarded each party one-half of that amount. The evidence does not preponderate against the trial court's valuation as it was within the range of evidence submitted.

## VI. Boat

At trial, Wife claimed that the parties purchased a boat for their use during the marriage and that they paid the insurance and slip rental payments associated therewith. Husband testified that the watercraft was both paid for by and titled to Ms. McNabb. No testimony regarding the boat was presented by Ms. McNabb.

The only documentary evidence presented during trial regarding ownership of this asset consisted of copies of insurance policy declaration pages, which reflected that Husband and Wife were listed as the insured parties. Based on this proof, the trial court

determined the boat to be a marital asset and ordered it sold with the proceeds to be equally divided. The evidence does not preponderate against the trial court's determination. As earlier noted:

> [T]rial courts are in a far better position than this Court to observe the demeanor of the witnesses, the weight, faith, and credit to be given witnesses' testimony lies in the first instance with the trial court. *Roberts v. Roberts*, 827 S.W.2d 788, 795 (Tenn. Ct. App. 1991). Consequently, where issues of credibility and weight of testimony are involved, this Court will accord considerable deference to the trial court's factual findings. *In re M.L.P.*, 228 S.W.3d 139, 143 (Tenn. Ct. App. 2007) (citing *Seals v. England/Corsair Upholstery Mfg. Co.*, 984 S.W.2d 912, 915 (Tenn. 1999)).

*Keyt*, 244 S.W.3d at 327. We conclude that the trial court properly determined the parties' boat to be marital property.

## VII. Award of Alimony

Finally, Husband contends that the trial court erred in awarding Wife alimony *in futuro* in the amount of $750 per month. In support, he claims that Wife did not demonstrate an actual need or that he had an ability to pay. According to Husband, Wife earned income of $470 per week through her employment as a housekeeper, and the monthly expenses shown on her expense statement were merely "guesstimates."

Tennessee Code Annotated § 36-5-121 (2014) provides in pertinent part:

> (d)(1) The court may award rehabilitative alimony, alimony in futuro, also known as periodic alimony, transitional alimony, or alimony in solido, also known as lump sum alimony or a combination of these, as provided in this subsection (d).

> (2) It is the intent of the general assembly that a spouse, who is economically disadvantaged relative to the other spouse, be rehabilitated, whenever possible, by the granting of an order for payment of rehabilitative alimony. To be rehabilitated means to achieve, with reasonable effort, an earning capacity that will permit the economically disadvantaged spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

(3) Where there is relative economic disadvantage and rehabilitation is not feasible, in consideration of all relevant factors, including those set out in subsection (i), the court may grant an order for payment of support and maintenance on a long-term basis or until death or remarriage of the recipient, except as otherwise provided in subdivision (f)(2)(B).

(4) An award of alimony in futuro may be made, either in addition to an award of rehabilitative alimony, where a spouse may be only partially rehabilitated, or instead of an award of rehabilitative alimony, where rehabilitation is not feasible. Transitional alimony is awarded when the court finds that rehabilitation is not necessary, but the economically disadvantaged spouse needs assistance to adjust to the economic consequences of a divorce, legal separation or other proceeding where spousal support may be awarded, such as a petition for an order of protection.

* * *

(i) In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

> (1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

> (2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

> (3) The duration of the marriage;

> (4) The age and mental condition of each party;

> (5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Regarding these statutory factors, the trial court found the parties' nineteen-year marriage to be of relatively long duration. The court also found that Wife had restricted employment opportunities due to her hearing impairment and limited job skills, noting that the most Wife had earned performing housecleaning services was $470 per week. Based on the evidence, the trial court determined that rehabilitation was not practical for Wife because there was no evidence regarding training that she could receive to enhance the level of her income. The trial court noted that Husband owned and operated his own business and that although Husband's 2011 federal tax return showed a net income of approximately $12,000 per year from Husband's business, "the Lindy Lane home, the Chaparral boat, and the vehicles owned by the parties point to a lifestyle a $12,000.00 income could never support." The court therefore concluded that Wife had demonstrated a need for alimony and that Husband had the ability to pay alimony despite the taxable income reflected on the parties' federal returns.

The evidence does not preponderate against the trial court's findings. This was a marriage of long duration, with both parties working and contributing to the marital estate. Wife was fifty-three years of age at the time of trial and maintained employment as a housekeeper, earning approximately $900 per month. Wife explained that she had been unable to obtain employment that would yield a higher wage due to her hearing impairment and limited job skills. She also acknowledged that the highest level of income she had ever earned was $470 per week.

The trial court considered additional evidence concerning Wife's monthly expenses. Wife related that she was currently residing with her daughter but planned to transition to independent living. According to Wife, she estimated the expenses she would reasonably incur if living on her own and calculated that she would experience a deficit of approximately $865 per month. The evidence supports a determination that Wife demonstrated a need for alimony.

Regarding Husband's ability to pay spousal support, Husband owned an automobile repair business and admitted that he was paid for his services by cash and credit card. He sometimes also traded his services for non-monetary compensation. Husband's bank statements demonstrated that in 2012, he deposited an average of $7,100 per month, or $85,000 per year, into his business operating account. In 2011, the parties' joint federal income tax return showed gross receipts for Husband's business operations in the amount of $71,264 but a corresponding net income of only $11,200. Similarly, in 2009, the parties' joint federal income tax return reflected gross receipts for the business in the amount of $70,341 and a net loss of $2,644. On his income and expense statement, Husband reported an average gross income in the amount of $900 per month. As the trial court noted, however, the parties' standard of living was inexplicably luxurious in comparison to their reported income. The court thus determined that despite the parties' tax returns, Husband had the ability to pay alimony. We conclude that the evidence does not preponderate against the trial court's determination in this regard.

## VIII. Attorney's Fees on Appeal

Wife seeks an award of attorney's fees on appeal, arguing that she confronts a lack of funds to pay for the defense of this appeal. As Wife correctly notes, this Court has the discretion to award her such fees. This Court has explained such an award of attorney's fees as follows:

> [I]t is in the sole discretion of this court whether to award attorney's fees on appeal. As such, when this Court considers whether to award attorney's fees on appeal, we must be mindful of "the ability of the requesting party to pay the accrued fees, the requesting party's success in the appeal, whether

the requesting party sought the appeal in good faith, and any other equitable factor that need be considered."

*Parris v. Parris*, No. M2006-02068-COA-R3-CV, 2007 WL 2713723 at *13 (Tenn. Ct. App. Sept. 18, 2007) (quoting *Dulin v. Dulin*, No. W2001-02969-COA-R3-CV, 2003 WL 22071454 (Tenn. Ct. App. Sept. 3, 2003)) (other internal citations omitted). Given Wife's limited assets and modest earning capacity, as well as Husband's lack of success on appeal, we determine this to be an appropriate case for an award of attorney's fees on appeal. We therefore remand this matter to the trial court for determination of a reasonable amount of attorney's fees to be awarded to Wife.

## IX. Conclusion

For the reasons elucidated above, we affirm the trial court's judgment in all respects. Wife's request for an award of attorney's fees on appeal is granted, and we remand this matter to the trial court for determination of a reasonable amount of attorney's fees to be awarded to Wife. Costs on appeal are assessed to the appellant, Thomas Dean McNabb.

_____
THOMAS R. FRIERSON, II, JUDGE